IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| WRIGHT ENRICHMENT, INC.; ) | |
| CHARTIS SPECIALTY INSURANCE ) | |
| COMPANY, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | CASE NO. 2:10-cv-03377-TMP |
| ) | |
| LaFAYETTE INSURANCE COMPANY, ) | |
| ) | |
| Defendant. ) | |

MEMORANDUM OPINION

This action is before the court on the defendant Lafayette Insurance Company's motion to dismiss the complaint for lack of federal subject-matter jurisdiction. Plaintiffs Wright Enrichment, Inc., ("Wright") and Chartis Specialty Insurance Company ("Chartis") filed the complaint in this action on December 6, 2010, alleging breach of contract by defendant Lafayette and seeking damages, specific performance, and injunctive relief to compel Lafayette to continue providing a defense to Wright with respect to several pending actions. The complaint alleges federal subject-matter jurisdiction based on supplemental jurisdiction under 28 U.S.C. § 1367. The motion to dismiss has been fully briefed by the parties, and they have consented to the exercise of dispositive jurisdiction by the undersigned magistrate judge.

At the outset it appears to be undisputed that subject-matter jurisdiction does not exist by virtue of either diversity of citizenship or federal question. In this action, plaintiffs contend that, pursuant to Lafayette's own insurance contracts, Lafayette has not yet exhausted its policy limits for coverage and defense of Wright, so that Lafayette's refusal to continue providing a defense is a

breach of contract. There is no substantial question of federal law, and it appears to be undisputed that there is no complete diversity between the plaintiffs and defendant Lafayette. Lafayette is a Louisiana corporation with its principal place of business being Louisiana, and Wright is a Louisiana corporation. The jurisdictional issue turns on whether supplemental and/or ancillary jurisdiction arising from the Multi-District Litigation actions assigned to this court supports the exercise of federal jurisdiction over the instant breach-of-contract action. Wright and Chartis argue that Lafayette agreed, as part of the settlement of the MDL cases (see master MDL case no. 2:08-cv-1946-RDP), to continue to defend Wright, and that Lafayette's recent settlement of two Georgia cases and declaration that it has exhausted its policy limits is, in addition to being a breach of the insurance contracts, a breach of the settlement agreement in the federal MDL actions. Lafayette contends that neither supplemental nor ancillary jurisdiction applies in support of subject-matter jurisdiction in a separate and distinct action. Of course, the burden of proving the existence of subject-matter jurisdictions rests on the plaintiffs, the parties invoking it.

Background Facts

The following facts appear to be without dispute. Plaintiff Wright has been sued in more than 250 lawsuits on claims of injuries caused by its product. The Multi-District Litigation Panel consolidated 222 of these claims and referred them to U.S. District Judge R. David Proctor of this court for pretrial management. The lead MDL case was case no. 2:08-cv-1946-RDP. More than 40 more such claims are pending in Georgia state court, consolidated before Judge Alvin Wong. For good measure, a separate lawsuit, referred to as the *Sturm Foods* litigation, is pending in Wisconsin state court against Wright.

Lafayette issued a general commercial liability policy to Wright with a $2 million policy limit, under which Lafayette was funding Wright's defense in all of these matters. Because claims were made in two policy years, Lafayette's total insurance limit on the claims is $4 million. Plaintiff Chartis is Wright's excess carrier, whose duty to defend and indemnify claims against Wright is triggered once Lafayette's primary coverage limit is exhausted.

Judge Proctor mediated a settlement of the 222 MDL cases referred to him, with Lafayette contributing $3.9 million to the settlement fund. On August 30, 2010, Judge Proctor entered a <u>Final Judgment and Order as to 222 Settling Plaintiffs</u> (Doc. 174 in 2:08-cv-1946-RDP), paragraph 1 of which incorporated the terms of a settlement agreement entered into by the parties on August 2, 2010. The <u>Final Judgement</u> entered judgment against Wright and various other defendants, and then established a fund from which the claims of the 222 plaintiffs were to be paid by a settlement administrator appointed by the court. Payment into the fund of the agreed amounts "shall discharge Defendants, and their Insurers and Sam Wright, of any further liability to Settling Plaintiffs, individually and collectively, regardless of any subsequent disputes regarding the allocation or distribution of the funds in the Total Body QSF [Qualified Settlement Fund]." (Doc. 174, ¶ 6). Paragraph 13 of the <u>Final Judgment</u> also states, "The Court shall retain complete and exclusive jurisdiction of these actions, all parties, and all related matters, including but not limited to exclusive jurisdiction to resolve any dispute regarding actions taken or decisions made by the Settlement Administrator."

Although the settlement agreement is referred to as Exhibit A to the <u>Final Judgment</u>, it does not appear to be attached to the <u>Final Judgment</u> or otherwise made part of the record in 2:08-cv-1946-RDP. The parties have not favored the court in the instant action with a copy of the settlement

agreement, preferring instead to quote portions of it in their briefs.[1]  Relying on these quotations, which appear not to be disputed, paragraph 7 of the settlement agreement provides:

> Lafayette Insurance shall continue to defend Wright only as required by Lafayette's policies of insurance of Wright, with respect to the Non-Settling Plaintiffs itemized in Exhibit B, only, with Lafayette reserving and not paying into this settlement $45,000 for each of the two Wright-Lafayette Insurance policy periods, and Lafayette Insurance having the right to settle one or more cases in Exhibit B therewith.

Of course, because the settlement agreement itself is not before the court, Exhibit B to the settlement agreement also is not before the court.

Claims administration of these 222 settled cases will take many months.  Having previously settled another case against Wright for $10,000, on November 18, 2010, Lafayette entered into a settlement of two more cases in Georgia for payment of $45,000 in each.  Lafayette now contends, and has notified Wright, that it has exhausted its $4 million policy limit and will no longer pay for Wright's defense, either during the claims administration process in Judge Proctor's MDL cases, or in the Georgia cases before Judge Wong, or in the Wisconsin *Sturm Foods* case.

Wright and Chartis objected to the November 18 settlement of the two Georgia cases, and they contend that Lafayette has not exhausted its policy limits because certain funds paid by Lafayette and certain defense expenses do not count against the $4 million policy limit.  In support of their motion for a preliminary injunction, they argue that Lafayette entered into a collusive agreement with Georgia plaintiff's attorney Mark Zamora to settle two of Zamora's cases for the purpose of exhausting its policy limits.  Notwithstanding the agreement, they contend that Lafayette

---

[1] To be clear, the parties having the burden of proof on jurisdiction have not provided the court with a copy of the settlement agreement nor have they given *verbatim* quotations of portions of the agreement.  The quotations that appear above in text are taken from Lafayette's brief.

4

has a continuing duty to defend Wright through the claims administration process in the MDL cases because, until that process is complete, Lafayette has not secured actual "settlement" of those cases. Additionally, they argue that, under the terms of the insurance contracts themselves, certain sums paid by Lafayette are deemed "supplementary payments," which do not count against the $4 million policy limits and for which the obligation to pay continues even after the exhaustion of policy limits. Depending on how these "supplementary payments" are calculated, there remains some balance left on the policy limits, which would obligate Lafayette to continue paying for Wright's defense in these various actions.

Supplemental Jurisdiction

As mentioned above, the complaint expressly grounds federal subject-matter jurisdiction in this case on the doctrine of supplemental jurisdiction provided in 28 U.S.C. § 1367. Since 1990, supplemental jurisdiction has codified at § 1367 the previously known doctrines of pendent and ancillary jurisdiction. City of Chicago v. International College of Surgeons, 522 U.S. 156, 165, 118 S. Ct. 523, 139 L. Ed. 2d 525 (1997) ("Congress has codified those principles in the supplemental jurisdiction statute, which combines the doctrines of pendent and ancillary jurisdiction under a common heading. 28 U.S.C. § 1367"); Palmer v. Hospital Authority of Randolph County, 22 F.3d 1559, 1562 n.3 (11th Cir. 1994) ("Formerly known as pendent and ancillary jurisdiction, such grounds for the exercise of federal subject matter jurisdiction have now been codified in 28 U.S.C. § 1367 ..."). That section now reads in relevant part:

> (a) Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, *in any civil action* of which the district courts have original

>jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims *in the action* within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.
>
> * * *
>
>(c) The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if--
>
>>(1) the claim raises a novel or complex issue of State law,
>>
>>(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
>>
>>(3) the district court has dismissed all claims over which it has original jurisdiction, or
>>
>>(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction. [Italics added for emphasis].

Keys to understanding the application of this jurisdictional provision to the instant case are the phrases "in any civil action" and "in the action" found in § 1367(a).  These phrases have been construed to limit the operation of supplemental jurisdiction to the "action" in which the court has original federal jurisdiction on some other ground.  As the Ninth Circuit explained:

>Supplemental jurisdiction must be exercised in the same action that furnishes the basis for exercise of supplemental jurisdiction.  The power of federal courts to exercise supplemental jurisdiction extends to "all other claims that are so related to claims in the action" when a district court has original jurisdiction "in any civil action."  28 U.S.C. § 1367(a).  The phrases "in any civil action" and "in the action" require that supplemental jurisdiction be exercised in the same case, not a separate or subsequent case.  "In a subsequent lawsuit involving claims with no independent basis for jurisdiction, a federal court lacks the threshold jurisdictional power that exists when ancillary claims are asserted in the same proceeding as the claims conferring federal jurisdiction."  Peacock v. Thomas, 516 U.S. 349, ___, 116 S. Ct. 862, 867, 133 L. Ed. 2d 817 (1996).

Ortolf v. Silver Bar Mines, Inc., 111 F.3d 85, 86-87 (9th Cir. 1997); see also International Union of Painters and Allied Trades District Council No. 78 Health & Welfare Fund v. Old Republic Surety Co., 2007 WL 1363135, *1 (M.D. Fla., May 8, 2007).  At issue in Ortolf was an action brought to enforce a settlement agreement reached in an earlier federal case.  In rejecting the invocation of supplemental jurisdiction in support of the action to enforce the settlement, the court of appeals noted that the district court in the earlier action had not retained jurisdiction to enforce the settlement, although it had stated that any party could "reinitiate" that action for enforcement. Nonetheless, the court of appeals concluded that § 1367(a) supplemental jurisdiction extended only to claims within the original action for which the court had subject-matter jurisdiction, not a separate or subsequent action.  While the district court might have retained jurisdiction to enforce the settlement agreement, that would not authorize the filing of a new and separate lawsuit.  The ancillary power to enforce the settlement agreement existed in the original action.

District courts in the Eleventh Circuit have generally taken this narrower view of supplemental jurisdiction, finding it more consistent with the limited jurisdictional character of federal courts.  For example, in International Union of Painters and Allied Trades District Council No. 78 Health & Welfare Fund v. Old Republic Surety Co., 2007 WL 1363135, *1 (M.D. Fla., May 8, 2007), the Middle District of Florida refused to find supplemental jurisdiction in a case simply because it was related to another case over which the court had jurisdiction.  The court explained:

> The Court rejects Plaintiffs' argument that § 1367 provides supplemental jurisdiction over their claims in this case due to the existence of subject matter jurisdiction over the related case, because § 1367 provides supplemental jurisdiction over related claims *in a single civil case*. See Peacock v. Thomas, 516 U.S. 349, 355 (1996) (stating that "[i]n a subsequent lawsuit involving claims with no independent basis

7

>for jurisdiction, a federal court lacks the threshold jurisdictional power that exists when ancillary claims are asserted in the same proceeding as the claims conferring federal jurisdiction"); Ortolf v. Silver Bar Mines, Inc., 111 F.3d 85, 86 (9th Cir.1997) (stating that "[s]upplemental jurisdiction must be exercised in the same action that furnishes the basis for exercise of supplemental jurisdiction"); Dimitri v. Canada, Inc., 2003 WL 22948345, at *2 (E.D. La. Dec. 9, 2003); Keene v. Auto Owners Ins. Co., 78 F.Supp.2d 1270, 1273 (S.D. Ala. 1999) (stating that § 1367 "provides that where a federal district court has original jurisdiction over an action, it may exercise jurisdiction over all claims raised within that action"); Sebring Homes Corp. v. T.R. Arnold & Associates, Inc., 927 F.Supp. 1098, 1101 (N.D. Ind.1995); USA One BV v. Delmont Fire Protective Service, Inc., 1993 WL 140514, at *1 (E.D. Pa. May 3, 1993) (stating that "the language of § 1367 clearly contemplates supplemental jurisdiction arising only from claims within a single action"); see also Xaros v. U.S. Fidelity & Guaranty Co., 820 F.2d 1176, 1180 n. 1 (11th Cir. 1987)(implying that supplemental jurisdiction can only be exercised over related claims in a single case by stating that the court could not exercise pendent jurisdiction over the case even if it were consolidated with a case over which the court had subject matter jurisdiction, because "[c]onsolidation does not result in a merger of suits or parties such that federal jurisdiction in one case can be engrafted upon a case with which it is consolidated. Each suit must have an independent jurisdictional basis."). [Italics added for emphasis].

See also Keene v. Auto Owners Insurance Co., 78 F. Supp. 2d 1270 (S.D. Ala. 1999) (discussing § 1367 supplemental jurisdiction in the context of removal).

In the instant case, Wright and Chartis have filed a *new* action alleging that Lafayette has breached its own contracts of insurance with Wright and, in so doing, also has breached the settlement agreement reached in the MDL cases before Judge Proctor. But under the "single civil action" language of § 1367, supplemental jurisdiction cannot be used to provide federal jurisdiction in a separate and distinct case simply because it is related to a case over which federal jurisdiction does exist. Supplemental jurisdiction under § 1367 extends only to "claims" within "the civil action" for which federal jurisdiction otherwise exists. Although it may be true, as discussed below, that as part of the settlement of a case, the court can retain jurisdiction to resolve disputes arising from its

settlement, this is a far cry from allowing a party to that settlement to file an entirely *new* action to enforce the terms of the settlement. Nothing in the express words used by Congress to describe the boundaries of supplemental jurisdiction hints that it can leap from one action to another. The phrase "in any civil action" certainly seems to limit the operation of supplemental jurisdiction to claims made *within that action*, not to claims made in a different lawsuit.[2]

There are sound reasons for limiting supplemental jurisdiction to operation within a single case. A jurisdictional rule that allows the filing of a *new* lawsuit, taking its jurisdictional support as being supplemental to another case, invites judge-shopping. Although the court does not suggest that judge-shopping in involved in the instant action, adopting the jurisdictional rule proposed by plaintiffs makes it possible. The proper forum for invoking the supplemental jurisdiction of the court is in the case in which jurisdiction clearly existed, not a separate case where a different judge may be assigned. A jurisdictional rule that allows for the filing of a new action under the supplemental jurisdiction of an earlier one would promote piecemeal litigation and would be wasteful of judicial resources. If claims are indeed so closely related as to be part of the same "case or controversy," they should be heard in the same civil action, not two separate actions.

---

[2] Plaintiff's citation to Thompson v D.C. America, Inc., 951 F. Supp. 192 (M.D. Ala. 1996), does not assist them because that case is easily distinguished. There, a motion was filed within a lawsuit seeking enforcement of a settlement agreement reached earlier *in the same lawsuit*. The same is true of Linebarger v. United States, 927 F. Supp. 1280, 1281-82 (N.D. Cal.1996), where a motion was filed to enforce a settlement purportedly reached earlier in that same action. Neither of these cases involves a *subsequent* action seeking to invoke supplemental jurisdiction linked to an earlier case.

Ancillary Jurisdiction

Despite the case law generally holding that the old, judge-made doctrines of pendent and ancillary jurisdiction have been consolidated and codified in § 1367 supplemental jurisdiction, see City of Chicago, *supra;* Palmer, *supra*, ancillary jurisdiction apparently still exists as a separate and distinct jurisdictional authority.  Courts point to the Supreme Court's short, unanimous opinion in Kokkonen v Guardian Life Insurance Company of America, 511 U.S. 375, 379-380, 114 S. Ct. 1673, 1676, 128 L. Ed. 2d 391 (1994), for the proposition that actions to enforce a settlement are within the ancillary jurisdiction of the federal action in which the settlement occurred, if the settlement was incorporated into the court's final decree and the court retained jurisdiction for such purposes.  See, e,g,, American Disability Ass'n, Inc. v. Chmielarz, 289 F.3d 1315 (11th Cir. 2002); Myers v. Richland County, 429 F.3d 740, 747 (8th Cir. 2005);  Montgomery v. Aetna Plywood, Inc., 231 F.3d 399, 411 (7th Cir. 2000).  Indeed, even after the 1990 codification of supplemental jurisdiction, the Supreme Court has continued to refer to ancillary jurisdiction as something different than supplemental jurisdiction provided under the statute.  See Peacock v. Thomas, 516 U.S. 349, 116 S. Ct. 862, 133 L. Ed. 2d 817 (1996).

As explained in Peacock and Kokkonen, there are two circumstances in which ancillary jurisdiction has been used to support federal jurisdiction over a matter that ordinarily would not be.

> Generally speaking, we have asserted ancillary jurisdiction (in the very broad sense in which that term is sometimes used) for two separate, though sometimes related, purposes: (1) to permit disposition by a single court of claims that are, in varying respects and degrees, factually interdependent, [citations omitted]... and (2) to enable a court to function successfully, that is, to manage its proceedings, vindicate its authority, and effectuate its decrees, see, e.g., Chambers v. NASCO, Inc., 501 U.S. 32, 111 S. Ct. 2123, 115 L. Ed. 2d 27 (1991) (power to compel payment of opposing party's attorney's fees as sanction for misconduct); United States v. Hudson, 11 U.S.

(7 Cranch) 32, 34, 3 L. Ed. 259 (1812) (contempt power to maintain order during proceedings).

Kokkonen v Guardian Life Insurance Company of America, 511 U.S. 375, 379-380, 114 S. Ct. 1673, 1676, 128 L. Ed. 2d 391 (1994). With respect to the former basis for ancillary jurisdiction, the Court later said in Peacock:

> Ancillary jurisdiction may extend to claims having a factual and logical dependence on "the primary lawsuit," ...., but that primary lawsuit must contain an independent basis for federal jurisdiction. The court must have jurisdiction over a case or controversy before it may assert jurisdiction over ancillary claims. See Mine Workers v. Gibbs, 383 U.S. 715, 725, 86 S. Ct. 1130, 1138, 16 L. Ed. 2d 218 (1966). In a subsequent lawsuit involving claims with no independent basis for jurisdiction, a federal court lacks the threshold jurisdictional power that exists when ancillary claims are asserted in the same proceeding as the claims conferring federal jurisdiction. See Kokkonen, *supra*, at 380-381, 114 S. Ct., at 1677; H.C. Cook Co. v. Beecher, 217 U.S. 497, 498-499, 30 S. Ct. 601, 601-602, 54 L. Ed. 855 (1910). *Consequently, claims alleged to be factually interdependent with and, hence, ancillary to claims brought in an earlier federal lawsuit will not support federal jurisdiction over a subsequent lawsuit.*

Id. at 355 (italics added). This clearly stresses the Supreme Court's concern that ancillary jurisdiction might be overused to extend federal judicial power beyond its proper constitutional limits. Therefore Peacock seems to state a general rule that ancillary jurisdiction will not support a separate, subsequent lawsuit simply on the basis that the facts in it are closely related to those of the earlier case. In any event, the facts underlying plaintiffs' breach of contract claims here are very different from the personal injury claims resolved in the MDL cases. There is not a sufficient factual similarity for ancillary jurisdiction to extent to the instant case under the first category of ancillary jurisdiction described by the Supreme Court.

The second traditional use of ancillary jurisdiction has been for enforcement of a court's decrees, and enforcement of settlement agreements to the extent that the settlement agreement is made part of a court decree or judgment. This is sometimes referred to as "ancillary enforcement jurisdiction." See, e.g. Syngenta Crop Protection, Inc. v. Henson, 537 U.S. 28, 123 S. Ct. 366, 154 L. Ed. 2d 368 (2002). In *dicta* in Kokkonen, the Court suggested that ancillary jurisdiction may be used to support an effort to enforce a settlement agreement if the agreement has been incorporated into a federal decree. After noting that such was not the case in Kokkonen (hence the subsequent statement is *dicta* because it was not necessary to a resolution of the case), the Court went on to say:

> The situation would be quite different if the parties' obligation to comply with the terms of the settlement agreement had been made part of the order of dismissal – either by separate provision (such as a provision "retaining jurisdiction" over the settlement agreement) or by incorporating the terms of the settlement agreement in the order. In that event, a breach of the agreement would be a violation of the order, and ancillary jurisdiction to enforce the agreement would therefore exist. That, however, was not the case here. The judge's mere awareness and approval of the terms of the settlement agreement do not suffice to make them part of his order.

Id. at 380. Nevertheless, the Court also has stressed that the somewhat imprecise formulation of ancillary jurisdiction must not be stretched beyond what is necessary to carry out its function of allowing a court to enforce its decrees. The Court cautioned: "In determining the reach of the federal courts' ancillary jurisdiction, we have cautioned against the exercise of jurisdiction over proceedings that are 'entirely new and original,' ... or where 'the relief [sought is] of a different kind or on a different principle' than that of the prior decree." Peacock, *supra,* at 358 (citing Dugas v. American Surety Co., 300 U.S. 414, 428, 57 S. Ct. 515, 521, 81 L. Ed. 720 (1937)). Whether a new matter comes within the ancillary enforcement jurisdiction of the court often turns on whether the new

matter is essential to the enforceability of the federal decree.  If it is not, the court should not stretch ancillary jurisdiction to cover something that otherwise would not be within federal subject-matter jurisdiction.

The court believes that, under the circumstances presented here, there is no ancillary enforcement jurisdiction *in this case*.  It appears to this court that, if there is ancillary enforcement jurisdiction, it lies in the case in which jurisdiction was retained for enforcement purposes, that is, in the MDL cases.  The plaintiff acknowledge that the MDL cases retained jurisdiction for enforcement purposes, and it is the enforcement of *that* decree that lies at the heart of the jurisdictional dispute.  To the extent that a party seeks to enforce the terms of a settlement agreement incorporated in to the Final Judgment in the MDL cases, that party should seek relief by motion or otherwise *in the MDL cases*.

It should be noted also that the issue raised in this action is different in character from those raised in cases finding ancillary jurisdiction as the basis for enforcement of a settlement agreement.  In most of these cases, the dispute centered on whether a breach of the terms of the settlement agreement itself had occurred; they required construction and enforcement of the terms of the court's own judgment adopting the settlement agreement.  While, in a way, that is true of this case as well, it is so only in a very tenuous and insignificant way.  In the instant case, the alleged breach of the settlement agreement turns entirely on a construction of Lafayette's insurance contracts, not the language of the court's judgment.  The MDL court's Final Judgment says nothing more on this point than that Lafayette will continue to defend Wright as required by its contracts of insurance.  Thus, the entire controversy is what the insurance contracts require, not what the court decree requires.  This case is clearly a simple breach-of-contract action masquerading as an attempt to enforce a

settlement agreement. Resolution of the case will not involve interpretation or construction of the settlement agreement itself or the court's Final Judgment, but construction of insurance contracts, an issue entirely of state law.[3] Indeed, it is an issue entirely of Louisiana state law between two Louisiana citizens. Even plaintiffs point to the "supplementary payments" provision of the insurance contracts as the essential basis of their claim that Lafayette has not exhausted its policy limits. Such an issue is not within the same "case or controversy" as the personal injury claims settled in the MDL case, and it is not an issue involving simply enforcement of the prior judgment. This is an attempt to litigate a new controversy involving insurance law.

Further, it is obvious that the alleged breach of contract will not imperil or undermine the Final Judgment in the MDL case. By its own terms, the Final Judgment makes clear that, upon payment of the agreed settlement funds (which Lafayette has done), neither Wright nor its insurers have any obligation to pay any other funds toward completion or enforcement of the Final Judgment. The costs, fees, and expenses of claims administration come entirely from the QSF, not additional payments by Wright or Lafayette. (See Case No. 2:08-cv-1946-RDP, Doc. 174, ¶ 8). Thus, resolution of the breach-of-contract claim by plaintiffs is not essential to the viability or enforcement of the settlement agreement in the MDL case. Insofar as Wright and Lafayette are concerned, that

---

[3] Wright and Chartis might argue that litigation of the contract dispute in this case will not involve the risk of any conflicting interpretation of the language of the MDL judgment or settlement agreement. Such an argument, however, would mean that the legal question raised here is not closely enough related to the MDL judgment or settlement agreement to be part of the same "case or controversy" for purposes of invoking supplemental jurisdiction in any event. The very fact that Wright and Chartis frame the issue here as a breach of the settlement agreement necessarily means that resolution of the issue in this court involves a risk of interpreting the settlement agreement in a way that conflicts with the MDL court's interpretation. This court holds simply that, if it is part of the same "case or controversy," supplemental and ancillary jurisdiction must be invoked in the MDL case, not in a separate action.

settlement will proceed with claims being paid to the settling plaintiffs out of the QSF, regardless of whether Lafayette defends Wright. There simply is no need to extend ancillary jurisdiction over the instant insurance contract dispute in order to effectuate the settlement agreement and <u>Final Judgment</u> in the MDL case. For this reason, ancillary enforcement jurisdiction does not support the exercise of federal jurisdiction, at least in this new and separate action.[4]

<u>Discretion to Decline Ancillary and Supplemental Jurisdiction</u>

Finally, even if the court does have supplemental or ancillary jurisdiction, § 1367(c) and traditional jurisdictional doctrine allow the court to decline to exercise that jurisdiction in certain circumstances, and the court believes this case fits such circumstances. Examining the four factors set out in § 1367(c) that guide the court's exercise of discretion, the court finds that all lean against the exercise of supplemental or ancillary jurisdiction *in this case*. First, there are no federal-law issues involved, but only complex and novel issues of Louisiana state law. Those state insurance law questions not only predominate, they are the only issues raised. Additionally, there are exceptional circumstances creating compelling reasons for not exercising jurisdiction in this case. The dispute in this case is whether Lafayette owes any contractual obligation to Wright to continue to fund Wright's defense, not only in the MDL cases in this court, but also in cases in Georgia and Wisconsin. To the extent Wright and Chartis believe that Lafayette has breached the settlement agreement in the MDL cases, they perhaps may seek a remedy there by motion invoking the court's *retained* jurisdiction in that case. Consistency with the purposes and aims of that settlement

---

[4] The court does not intend to express any opinion about the exercise of ancillary jurisdiction in the MDL master case, 2:08-cv-1946-RDP.

agreement suggests that the alleged breach of the settlement agreement be litigated under the retained jurisdiction in that case, not a new and distinct case. That, indeed, was the reason the court retained jurisdiction over the settlement agreement *in that case*. Judicial economy and respect for court decrees counsel against exercising supplemental or ancillary jurisdiction for the filing of a new action. Allowing a new action to stake its jurisdiction on the judgment in an earlier case *in which jurisdiction was retained* raises the prospect of two separate actions and two separate judges being called on to address the same legal controversy, with all of the inherent problems of judge shopping, inconsistent rulings, *res judicata*, and conflicting remedies. Rather than risk these hazards, this court will decline to exercise supplemental or ancillary jurisdiction even if it exists, so that the parties may return to the case in which jurisdiction was retained for that very purpose.

Conclusion

The court concludes therefore that § 1367(c) supplemental jurisdiction simply cannot be used to bootstrap jurisdiction in a case merely because its issues are related to a judgment or settlement in another case where jurisdiction did exist. Nor does ancillary jurisdiction extend to the breach-of-contract action that is the gravamen of this case. To the extent that the parties have a legitimate dispute about Lafayette's obligation under the MDL settlement agreement to continue to fund Wright's defense, the proper forum is perhaps the MDL case itself, where the court expressly retained jurisdiction to address issues arising out of the settlement agreement.[5] On the other hand, if the controversy is viewed properly as nothing more than a coverage question under state insurance law,

---

[5] Again, the court expresses no opinion about whether, in fact, the MDL case has supplemental or ancillary jurisdiction of this controversy. For many of the reasons expressed above, it may be that there is no proper federal forum for this dispute.

essentially unrelated to the federal decree, there is no jurisdiction for this court to invoke. Under either view of the case, there is no supplemental or ancillary jurisdiction supporting the exercise of federal judicial power *in this case*. Finally, even if the court is mistaken about its lack of jurisdiction, the court declines under § 1367(c) to exercise that jurisdiction under the unique and exceptional circumstances of this case. By separate order, the case will be dismissed without prejudice for want of subject-matter jurisdiction.

DONE this 2nd day of February, 2011.

_____
T. MICHAEL PUTNAM
U.S. MAGISTRATE JUDGE